UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VISTEON CORPORATION,

    Plaintiff,

v.

VARROCCORP HOLDING B.V. and
VARROC ENGINEERING PRIVATE LTD.,

    Defendants.

and

VARROCCORP HOLDING B.V. and
VARROC ENGINEERING PRIVATE LTD.

    Counter-Plaintiffs,

v.

VISTEON CORPORATION, VIHI, LLC,
VEHC, LLC, and VISTEON HOLDINGS
ESPANA, S.L.,

    Counter-Defendants.
_____/

Case No. 14-12418
Hon. John Corbett O'Meara

**ORDER GRANTING**
**VISTEON'S MOTIONS TO DISMISS**

Before the court are Visteon's motions for partial dismissal of VarrocCorp Holding B.V. and Varroc Engineering Private Limited's counterclaims and amended counterclaims. The court heard oral argument on March 19, 2015, and

took the matter under advisement. For the reasons discussed below, Visteon's motions are granted.

## BACKGROUND FACTS

This is a breach of contract action involving an Asset Purchase Agreement ("APA") between Visteon, VarrocCorp, and related entities. Through the APA, Visteon sold its automotive lighting systems business to Varroc. Visteon alleges that Varroc breached the agreement and filed its complaint in this court on June 20, 2014. The Defendants are VarrocCorp Holding B.V. and Varroc Engineering Private Limited. VarrocCorp Holding was served first and filed an answer and counterclaim on November 12, 2014. Visteon filed a motion for partial dismissal of the counterclaims on December 12, 2014. Varroc Engineering was served later and filed its answer and counterclaims (which are the same as those asserted by VarroCorp Holding) on December 17, 2014. Visteon filed a second motion for partial dismissal of Varroc Engineering's counterclaims on January 16, 2015.

Varroc Engineering then filed an amended counterclaim as of right on January 23, 2015. (VarrocCorp Holding sought permission from Visteon to amend, which Visteon refused.)[1] Visteon filed a motion to dismiss Varroc

---

[1] In ruling on the motions to dismiss, the court will consider the allegations in the first amended complaint as to both Varroc entities.

Engineering's amended counterclaim on February 9, 2015. Because their claims are identical, the court will refer to VarrocCorp and Varroc Engineering together as "Varroc."

In the APA, the parties defined Visteon's "Material Contracts" (Article 5.9) to be purchased by Varroc. With respect to these Material Contracts, Visteon made the following representations:

> Each Material Contract is in full force and effect and is valid, binding and enforceable in accordance with its terms as to the respective Visteon Operating Company that is a party to the Agreement, and to Seller's Knowledge, the other parties to the Material Contract.
>
> (i) Each Visteon Operating Company has in all material respects performed and is performing all its obligations under the Material Contracts to which it is a party.
> (ii) No Visteon Operating Company, nor, to Seller's Knowledge, any other party is in default of any material obligation under any of the Material Contracts to which such Visteon Operating Company is a party;
> (iii) No Visteon Operating Company has received any written notice of default under any of the Material Contracts, nor to Seller's Knowledge has any event occurred that with notice or lapse of time or both would constitute a material default by any Visteon Operating Company under any Material Contract to which such Visteon Operating Company is a party; and
> (iv) To Seller's Knowledge, no Visteon Operating Company has received any written notice of intent to terminate any Material Contract to which such Visteon Operating Company is a party.

APA at § 5.9.

Varroc's claims of fraud are based upon representations Visteon made regarding its customer, Fisker Automotive.  According to Varroc, Visteon claimed that it had long-term programs with Fisker with a combined revenue of $14.3 million annually.  Prior to the closing of the APA on August 1, 2012, however, Visteon learned that the Fisker business would decline substantially in the future.  Visteon did not provide this updated information to Varroc.  Additionally, the decline in Fisker business was causing problems for Visteon's suppliers, who had contracted to provide parts to Visteon for the Fisker project.  Varroc contends that it relied upon the information supplied by Visteon regarding Fisker in evaluating the business acquisition and purchase price.

In its amended countercomplaint, Varroc alleges that Visteon knew that Fisker was in breach of its agreement with Visteon and that, as a result, Visteon was in default of certain Material Contracts with its suppliers.  Countercomplaint at ¶¶ 24-28, 38-42.  According to Varroc, Visteon breached Article 5 of the APA. Id. at 46.  Varroc alleges the following counterclaims against Visteon in the first amended countercomplaint: Count I, breach of contract; Count II, fraudulent misrepresentation; Count III, constructive fraud; Count IV, fraud in the inducement; and Count V, silent fraud.  Visteon seeks dismissal of all of Varroc's

claims of fraud as well as Varroc's contract and fraud claims against VIHI, LLC, and VEHC, LLC.

## LAW AND ANALYSIS

### I. Fraud Claims against Visteon

Visteon argues that Varroc's fraud claims should be dismissed for various reasons, including that the claims are barred by the economic loss doctrine. The economic loss doctrine precludes a party to a contract from bringing tort claims that are factually indistinguishable from breach of contract claims. See Detroit Edison Co. v. NABCO, Inc., 35 F.3d 236, 240 (6th Cir. 1994). "[T]he essence of the 'economic loss' rule is that contract law and tort law are separate and distinct, and the courts should maintain that separation in the allowable remedies. There is a danger that tort remedies could simply engulf the contractual remedies and thereby undermine the reliability of commercial transactions. Once the contract has been made, the parties should be governed by it." Huron Tool & Engin. Co. v. Precision Consulting Serv., Inc., 209 Mich. App. 365, 371 (1995) (citation omitted).

There has been some confusion in Michigan law on this point, but the term "economic loss doctrine" only applies to cases arising under the Uniform Commercial Code. See Santander Consumer USA, Inc., v. Superior Pontiac Buick

GMC, Inc., 2013 WL 27921 (E.D. Mich. Jan. 2, 2013) (Edmunds, J.). A similar concept, enunciated in Hart v. Ludwig, 347 Mich. 559 (1956), applies to non-UCC cases such as this. See id. Essentially, the rule is that "an action in tort requires a breach of duty separate and distinct from a breach of contract." Brock v. Consolidated Biomedical Lab., 817 F.2d 24, 25 (6th Cir. 1987).

Visteon argues that Varroc's fraud claims are based upon express representations contained in the Asset Purchase Agreement and that, therefore, Varroc's remedy lies in a breach of contract claim, not tort. In determining whether a party may pursue a tort action, when the parties' relationship is governed by a contract, the court must focus on whether the duty breached arises from tort or contract. "[T]he threshold inquiry is whether the plaintiff alleges a violation of a legal duty separate and distinct from the contractual obligation." Rinaldo's Constr. Corp. v. Michigan Bell Tel. Co., 454 Mich. 65, 84 (1997).

Here, Varroc's claims of misrepresentation, constructive fraud, and silent fraud are indistinguishable from its breach of contract claim. In Section 5.9(b) of the APA, Visteon makes various representations regarding "Material Contracts" to be assumed by Varroc, *i.e.*, that all such contracts are being performed and that there have been no defaults or "material adverse change." See also APA at § 5.16. Varroc claims that these representations were untrue. Varroc admits in its brief

that its "fraud claims are based on the Material Contracts that are also the subject of representations and warranties." Resp. at 21. Varroc has not identified representations distinct from those made in the APA that provide the basis for its fraud claims. Varroc's fraud claims are "interwoven" with its breach of contract claims; they relate to Visteon's "performance of the contract and do not give rise to an independent cause of action in tort." Huron Tool, 209 Mich. App. at 373.

Varroc contends, however, that its fraud claims are not barred by the Hart rule because it is alleging fraud in the inducement, which is an exception to that rule. However, "fraud in the inducement is not available for a breach of a contract's terms, lest fraud in the inducement swallow all breach-of-contract claims." Uhl v. Komatsu Forklift Co., 512 F.3d 294, 304 (6th Cir. 2008). "[A] claim of fraud in the inducement, by definition, redresses misrepresentations that induce the buyer to enter into a contract *but that do not in themselves* constitute contract or warranty terms subsequently breached by the seller." Huron Tool, 209 Mich. App. at 375 (emphasis added). Here, Varroc's fraud claims are indistinguishable from its breach of contract claims. Essentially, Varroc contends that Visteon has not lived up to the representations and warranties regarding its assets, including the Fisker account, that are set forth in Section 5 of the APA. Varroc's remedy is in breach of contract, not fraud.

For these reasons, the court finds that Varroc cannot maintain its fraud claims and will grant Visteon's motions to dismiss on this issue.

## II.  Claims against VIHI and VEHC

VIHI and VEHC are wholly owned subsidiaries of Visteon.[2]  Varroc's fraud claims against VIHI and VEHC are indistinguishable from those against Visteon and must fail for the same reasons.

Visteon also seeks dismissal of Varroc's breach of contract claims against VIHI and VEHC.  In its countercomplaint, which does not differentiate between Visteon, VIHI, and VEHC, Varroc contends that Visteon breached the APA by failing to indemnify it under Article 16.1(b) and by breaching its representations and warranties under Article 5.  The representations and warranties set forth in Article 5 begin with the statement that "Seller [Visteon] represents to Buyer, as to itself [and] the Stock Selling Subsidiaries [VEHC, VIHI, and Visteon Holdings Espana]" and goes on to list the warranties.  In other words, Visteon made the Article 5 representations and warranties on behalf of VEHC and VIHI.

Visteon argues that only it, as the "Seller," made the representations set forth in Article 5 and that VEHC and VIHI did not make any representations.  Visteon

---

[2] Visteon Holdings Espana, S.L., is identified as a counter-defendant, but has apparently not yet been served.

-8-

contends that Varroc has not alleged that VEHC and VIHI breached any obligations that they owed under the APA.

Varroc contends that VEHC and VIHI are liable for any breach of Article 5 because in making those representations, Visteon was acting as the agent of VEHC and VIHI. Visteon has not responded to this argument. At this stage of the proceedings, the record has not developed sufficiently so that the court may determine as a matter of law whether VEHC and VIHI may be liable under the APA. The court will deny Visteon's motion on this issue.

### III.     Motion to Supplement

After the hearing, Varroc filed a motion to supplement the record with an exhibit. The court grants Varroc's motion.

### ORDER

IT IS HEREBY ORDERED that Visteon's December 12, 2014 motion for partial dismissal [Docket No. 18] is GRANTED.

IT IS FURTHER ORDERED that Visteon's January 16, 2015 motion to dismiss counterclaims [Docket No. 29] is GRANTED IN PART, consistent with this opinion and order.

IT IS FURTHER ORDERED that Visteon's February 9, 2015 motion to dismiss first amended counterclaim [Docket No. 34] is GRANTED IN PART,

consistent with this opinion and order.

     IT IS FURTHER ORDERED that Varroc's motion to supplement [Docket No. 40] is GRANTED.

                                      s/John Corbett O'Meara
                                      United States District Judge

Date:  March 31, 2015

     I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, March 31, 2015, using the ECF system.

                                        s/William Barkholz
                                        Case Manager